UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ELEANOR MOFFETT**<br>  Plaintiff,<br><br>v.<br><br>**CITY OF SAN ANTONIO, and STABILITY STAFFING AND CONSULTING, LLC**<br>  Defendants. | § § § § § § § § § | **Civil Action Number:** 5:21-cv-722 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Eleanor Moffett is a qualified individual with a disability who sought, and was denied, the reasonable accommodation, supported by medical evidence, of bringing her service dog with her to her workplace at the City of San Antonio's Animal Care Services Department. She was then was retaliated against for making the accommodation request and consequently lost her employment with both defendants.

## JURISDICTION

1. This is an action under Rehabilitation Act of 1973, as amended ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, and under the Americans with Disabilities Act, as amended ("ADAAA"), 42 U.S.C. § 12101 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and pursuant to 42 U.S.C. § 2000e-5(f)(3), which is incorporated into both the Rehabilitation Act (at 29 U.S.C. § 794a) and the ADAAA (at 42 U.S.C. § 12117(a)).

## VENUE

2. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in this judicial district and because the employment records relevant to these practices are maintained in this judicial district.

## PARTIES

3.	Plaintiff Eleanor Moffett is a person of majority age with capacity to sue. As an employee of the two defendants with respect to her work at the City of San Antonio's Animal Care Services Department, she was at all times a qualified individual with post-traumatic stress disorder ("PTSD"), an actual disability.

4.	Defendant City of San Antonio ("the City") is a municipality with capacity to be sued. The City was one of Ms. Moffett's two employers with respect to her work at the City's Animal Care Services Department. At all times during its employment of Ms. Moffett, it was a covered employer within the meaning of the ADAAA because, among other things, it employed the requisite number of employees. It also received federal financial assistance, thereby rendering 29 U.S.C. § 794 (the Rehabilitation Act) applicable to its employment programs and activities.

5.	Defendant Stability Staffing and Consulting, LLC ("Stability"), is a limited liability company formed under Texas law and with capacity to be sued. Stability was the other of Ms. Moffett's two employers with respect to her work at the City's Animal Care Services Department. At all times during its employment of Ms. Moffett, it was a covered employer within the meaning of the ADAAA because, among other things, it employed the requisite number of employees.

## STATEMENT OF FACTS

6.	Stability hires people to work for its clients. One of its clients was the City. Pursuant to its business model and its contract with the City, Stability hired Ms. Moffett to work at the City's Animal Care Services Department beginning in July 2018.

7.	Ms. Moffett, at the time she was hired to work for the City, had already been

diagnosed with PTSD, but she did not at that time request the reasonable accommodation of bringing a service dog with her to her workplace because she did not yet have one. She first raised the issue in discussions with both employers in approximately January 2019.

8. Over the next two months, Ms. Moffett provided documentation from her licensed clinical social worker and from her psychiatrist supporting her accommodation request, and put her accommodation request in a letter to both employers dated March 14, 2019. Specifically, she requested in the letter that her "service dog (Dexter) be allowed to accompany me to work daily and at all work related functions (trainings, off site duties etc.)" She also requested in the letter that she "be removed from performing 'greeter' duties at the front desk."

9. At no point did the City or Stability engage with Ms. Moffett in the interactive process of discussing a reasonable accommodation that should have followed Ms. Moffett's request. Shortly after Ms. Moffett submitted the written request, the City asked Ms. Moffett "to write a letter of justification" specifically with respect to the request for "not performing greeter duties." Ms. Moffett responded to the City in writing (with a copy to Stability) on April 4, 2019, and asked to be informed if the City required "more clarification on this matter." She also advised that her service dog would be finished with training on May 10 and that she "hop[ed] to have approval to bring him to work with me by that date."

10. The only time anyone from the City discussed reasonable accommodation in person with Ms. Moffett was when, a few weeks after Ms. Moffett's submission of the March 14, 2019 letter, Bethany Colonesse, the Live Release Program Manager, met with Ms. Moffett and another Department manager (Krystine Ellan). During that meeting, Ms. Colonesse told Ms. Moffett that she had no experience in these matters, but that she doubted the City would be able to accommodate her. On another occasion during the month when Ms. Moffett's request was

pending, Ms. Moffett experienced a severe flashback episode and excused herself from a meeting for a few minutes. Ms. Colonesse later told Ms. Moffett that her PTSD made her an ineffective employee and that she needed either to sort out her issues or to leave the employment.

11. On April 15, 2019, Stability informed Ms. Moffett that the City denied her accommodation request. The Stability manager who informed Ms. Moffett documented the conversation in a memorandum stating that the denial "may have to do with her primary duty as an intake coordinator is greeting the people that come in and getting them checked in." Greeting and checking in customers was not Ms. Moffett's primary duty, or even one of her essential functions. The memorandum offered no speculation on why the City denied Ms. Moffett's request to bring her service dog to work, much less why it refused to engage in the interactive process with her.

12. The City's denial, as conveyed to Ms. Moffett through Stability, invited no further discussion with Ms. Moffett on the subject. Yet disability law requires an interactive process that looks for win-win solutions, rather than a "just say no" approach. The Stability manager's memorandum also pointed to no further steps that Stability intended to take on Ms. Moffett's behalf with respect to the City's rejection of her request for reasonable accommodation.

13. Ms. Moffett filed EEOC Charge No. 451-2019-02070 against the City on April 26, 2019, and Charge No. 451-2019-02121 against Stability on the same date.

14. Ms. Moffett's job, during the time in question, was to serve as one of four Live Release Program Coordinators. Two were employed directly, and only, by the City. The other two—Ms. Moffett and Sherry Shankle—were also employed by Stability. On March 25,

2019—while Ms. Moffett's request for reasonable accommodation was still pending with the City—Ms. Moffett applied for a job, titled Live Release Intake Coordinator, in which she would have been employed directly, and only, by the City. On June 7, 2019, the City interviewed Ms. Moffett, but selected another candidate to fill the position.

15. On the same day, Ms. Ellan informed Ms. Moffett that the City planned to reallot the two Live Release Program Coordinator positions it filled via Stability in the Department's intake section to the pet adoptions section, but that she and Ms. Shankle were not going to occupy the transferred positions in the adoptions section, and that their assignments as Live Release Program Coordinators would end on June 15, 2019.

16. In connection with reallotment, the City created a third Live Release Program Coordinator position as a position to be filled by a person employed directly, and only, by the City. Ms. Moffett and Ms. Shankle were among the applicants for this position.

17. This position was still open—the City had not yet announced a selection from among the candidates—as of June 15, 2019. Because Ms. Moffett had no other assignment from Stability to work elsewhere for the City or for any other employer, her employment by the City and Stability ended.

18. Despite Ms. Ellan's explanation about reallotment of the Stability-filled positions from the intake section to the pet adoptions section, Ms. Shankle returned to work on June 16, 2019, and thereafter, as a Stability-supplied employee serving as a Live Release Program Coordinator. Eventually, the City selected Ms. Shankle over Ms. Moffett to fill that same position as an employee of the City, even though Ms. Shankle could not satisfy the job requirements of lifting animals up to 50 pounds, dealing with fractious animals, and using all aspects of the Department's computer system.

19. Ms. Colonesse subjected Ms. Moffett, after she requested reasonable accommodation, to unwarranted criticism, increased scrutiny of her job performance, and conflicting instructions.

20. On July 8, 2019, and as amended on August 15, 2019, Ms. Moffett filed EEOC Charge No. 451-2019-02994, alleging retaliation by the City.

21. The EEOC has issued a Dismissal and Notice of Rights in all three of Ms. Moffett's charges (Charge Nos. 451-2019-02071, 451-2019-02121, and 451-2019-02994).

## CLAIMS

### a. The City's and Stability's Discriminatory Denial of Reasonable Accommodation

22. Ms. Moffett requested accommodations that were reasonable: bringing her service dog to work—to the workplace and to work-related functions—and removal from greeter duties at the front desk. In rejecting these accommodations and failing to engage with her in the interactive process of evaluating the reasonableness of any other accommodations that the Rehab Act and/or ADAAA required the City to provide Ms. Moffett, the City violated 29 U.S.C. § 794(d) and 42 U.S.C. § 12112(b)(5)(A).

23. Stability had a contract with the City that had the effect of subjecting Ms. Moffett to the City's discrimination against her in the form of its denial of reasonable accommodation, in violation of the ADAAA, 42 U.S.C. § 12112(b)(2). Disability law prohibits an employer from entering into a contract that allows a worker to be discriminated against by others due to disability. Stability had the legal obligation to protect its employee from discrimination, yet did the exact opposite.

### b. The City's Rejection of the March 25, 2019 Application

24. In refusing to hire Ms. Moffett for the position for which she applied to the City

6

on March 25, 2019, the City discriminated against her in violation of the Rehab Act, 29 U.S.C. § 794(d), and/or the ADAAA, 42 U.S.C. 12112(b)(1) and (b)(5)(B).

25. In refusing to hire Ms. Moffett for the position for which she applied to the City on March 25, 2019, the City retaliated against her because of her protected activity, i.e., her request for reasonable accommodation and her filing of Charge No. 451-2019-02070, in violation of the Rehab Act, 29 U.S.C. § 794(d), and/or the ADAAA, 42 U.S.C. 12203(a).

### c. The City's Rejection of the June 7, 2019 Application

26. By eliminating the position Ms. Moffett held via Stability, and in refusing to hire Ms. Moffett for the position for which she applied to the City on June 7, 2019, which resulted in Ms. Moffett's termination of employment, the City discriminated against her in violation of the Rehab Act, 29 U.S.C. § 794(d), and/or the ADAAA, 42 U.S.C. 12112(b)(1) and (b)(5)(B).

27. By eliminating the position Ms. Moffett held via Stability, and in refusing to hire Ms. Moffett for the position for which she applied to the City on June 7, 2019, which resulted in Ms. Moffett's termination of employment, the City retaliated against her because of her protected activity, i.e., her request for reasonable accommodation and her filing of Charge No. 451-2019-02070, in violation of the Rehab Act, 29 U.S.C. § 794(d), and/or the ADAAA, 42 U.S.C. 12203(a).

### d. Damges

28. The City's and Stability's conduct has caused Ms. Moffett the loss of wages and other job benefits, and emotional and other harm.

29. The City and Stability acted with recklessness and conscious indifference to Ms. Moffett's federally protected rights, and are therefore liable for exemplary damages in an amount to be determined by the jury.

## JURY DEMAND

30.     Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Moffett demands: (1) judgment against Defendants in an amount to make her whole for all damages suffered by her as a result of Defendants' violation of the Rehabilitation Act and ADAAA, including but not limited to damages for back pay and benefits, reinstatement or front pay, compensatory damages, vacation pay, COBRA payments, bonus pay, liquidated damages, exemplary damages and all other damages recoverable under the Rehabilitation Act and ADAAA, plus prejudgment and other interest; (2) that this Court enjoin Defendants from further violating the Rehabilitation Act and ADAAA; (3) that this Court award Ms. Moffett expert witness fees, attorneys' fees and the cost of bringing this action; and, (5) that this Court grant her all other relief that he is entitled to under law and equity.

Respectfully submitted,

/s/ John W. Griffin, Jr.
John W. Griffin, Jr.
TX Bar No. 08460300
Robert E. McKnight, Jr.
TX Bar No. 24051839

MAREK, GRIFFIN & KNAUPP
203 N. Liberty Street
Victoria, Texas 77901
Tel. 361-573-5500
Fax. 361-573-5040

**Counsel for the Plaintiff**